# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

CYNTHIA ANN FESTER,

        Petitioner,    :    Case No. 1:22-cv-073

  - vs -        District Judge Douglas R. Cole
                Magistrate Judge Michael R. Merz

WARDEN, Dayton Correctional
  Institution,

                  :
        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Cynthia Ann Fester pursuant to 28 U.S.C. § 2254, is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 11), and the Return of Writ (ECF No. 12).

When ordering the State to answer, Magistrate Judge Vascura provided that Petitioner's Reply would be due twenty-one days after the Return was filed (Order, ECF No. 7, PageID 50). In this case, that date was September 26, 2022 (twenty-one days plus three days because Petitioner was served with the Answer by mail). Petitioner has neither filed a reply nor sought an extension of time to do so. Thus the case is ripe for decision.

The Magistrate Judge reference in this case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District (Transfer Order, ECF No. 13).

**Litigation History**

On January 31, 2018, law enforcement officers executed multiple search warrants connected with this case. At Petitioner's address they found and seized more than 125 pounds of marijuana.

> Also found in the office was the pink suitcase appellant had transported to Ohio from California. Inside the pink suitcase were sealed bags of marijuana. A tote bag found in the office contained marijuana and dryer sheets and a file cabinet drawer held two bags of marijuana. In addition, vacuum seal bags, an envelope addressed to appellant, a currency counter, a digital scale, a Dickey's BBQ cup containing marijuana, a drug ledger, and additional dryer sheets were also found in the office.
>
> In the hallway outside the office, officers found another drug ledger. In the kitchen and dining room of appellant's home, officers found marijuana in a cabinet, two vacuum sealers, a currency counter in the pantry, and a surveillance camera. In a spare bedroom located across from the master bedroom, the officers found a drug ledger, mail from Pacific Kitchen, a black bag containing $94,780 in currency, loose marijuana, packaging material, pre-rolled marijuana joints, luggage containing $49,870, and a checkbook belonging to Ken Ly. In appellant's master bedroom, officers found a surveillance camera, $20,000 in a file cabinet drawer, a drug ledger next to the bed on the floor, $1,969 in bundled currency in appellant's purse, $5,059.25 in a safe on the floor of appellant's closet, two iPhones, an AK-47 in the closet
>
> Law enforcement also obtained search warrants for appellant's bank accounts. Appellant had more than ten bank accounts, with varying amounts of money in each account. In one bank, appellant had a safety deposit box in which she stored vintage coins, silverware, and a bag with $25,040 in cash with "To Joshua Adam Plummer" written on it. In another bank, appellant had more than $44,000 in five accounts. Law enforcement's review of appellant's tax records from 2013 to 2016 indicated she earned less than $20,000 during each of those years. Appellant, who was on disability due to a back injury, was employed as a PRN employee at a hospital, working a couple of times a week.

*State v. Fester,* 2021-Ohio-410, 167 N.E.3d 1021 (Ohio App. 12th Dist., Feb. 16, 2021). As of July 6, 2018, these seizures had not yet resulted in any charges against Petitioner. On that date she

went to a local bar and met up with some friends. Someone in the group identified Rob Herking to her as an attorney. She approached him, confirmed he was a member of the bar, and told him she had a case. When he learned upon inquiry that the matter was pending with the Clermont County Prosecutor's Office, he declined to speak further about it because he was then an assistant county prosecutor in that office. She declined his offer to call her attorney, Steven Wenke.[1] Upon leaving the bar, at least some of the group went to the home of one of them and joined one another in her hot tub, while continuing to drink. When the hot tubbing was done, the hostess offered to allow people to stay overnight to avoid driving after drinking. Petitioner and Herking accepted that offer.

> RH and appellant slept in the same bed, although they did not engage in any sexual activity. Though appellant claimed she only stayed out of fear after RH grabbed her by the arm and told her she was not going anywhere, text messages appellant sent to RH the following day undercut this claim. In the text messages, appellant unsuccessfully sought to make future plans with RH. RH did not, however, have any future contact with appellant.

*State v. Fester supra,* at ¶ 29.

When Herking's social but not sexual evening with Petitioner came to the attention of his superiors in early August 2018 he resigned. Petitioner was indicted September 11, 2018 (State Court Record, ECF No. 11, Ex. 1).

On February 1, 2019, Petitioner asked that the entire Clermont County Prosecutor's Office withdraw from the case or be involuntarily disqualified "for the reason that a now-former assistant Clermont County prosecuting attorney engaged in an inappropriate relationship with defendant during the pendency of the investigation of this defendant by law enforcement. . . ." (Motion, State

---

[1] Mr. Wenke is known to the Magistrate Judge as a prominent criminal defense attorney in the Cincinnati area. The record does not reveal how he became her attorney in this matter, whether it was by appointment because she was the target of an investigation, or he was retained.

3

Court Record, ECF No. 11, Ex. 6, PageID 76). After a hearing at which both Petitioner and Herking testified, the trial judge denied the motion. (*Id.* at Ex. 7; transcript at ECF No. 11, attachment 1).

Petitioner's case was tried to a jury and she was convicted on May 2, 2019 (Verdicts, State Court Record, ECF No. 11, Ex. 8). The trial court merged the trafficking and possession convictions and sentenced her to eight years imprisonment. *Id.* at Ex. 10. Petitioner appealed raising the following assignments of error:

> 1. The trial court erred by not ordering a special prosecutor where a county assistant prosecutor spent a night drinking with and then sleeping in bed with appellant.
>
> 2. The trial court erred by prohibiting the jury from viewing the entire uninterrupted interrogation of appellant.
>
> 3. The jury erred by finding appellant guilty when the evidence was insufficient to support a conviction.
>
> 4. The verdict was against the weight of the evidence.

(Appellant's Brief, State Court Record, ECF No. 11, PageID 104-105).

The Twelfth District affirmed. *State v. Fester, supra.* Petitioner appealed to the Supreme Court of Ohio, raising the following single proposition of law:

> A special prosecutor should have been appointed after an assistant prosecutor spent a night drinking, lounging in a hot tub, and sleeping in the same bed with Appellant while she was a target of an investigation and was represented by counsel, but that court declined to exercise jurisdiction.

(Memorandum in Support of Jurisdiction, State Court Record ECF No. 11, Ex. 19, PageID 204). The Ohio Supreme Court declined jurisdiction. *State v. Fester*, 163 Ohio St.3d 1441 (2021). Petitioner filed her Petition in this Court February 9, 2022.

4

The Petition pleads four grounds for habeas corpus relief as follows:

> **GROUND ONE**: The court erred by not appointing a special prosecutor to this case, in violation of the 5th, 6th, & 14th amendments.
>
> **Supporting Facts**: Petitioner spend night drinking, then sleeping in bed with an assistant prosecutor from the county that prosecuted this case.
>
> **GROUND TWO**: The court erred when it prohibited the jury from viewing the entire interrogation of petitioner violating 5th, 6th & 14th amendments.
>
> **Supporting Facts**: The jury was prevented from seeing the unredacted version of the interrogation, which showed the officer threatening petitioner with years in prison if she did not answer his questions.
>
> **GROUND THREE**: There was insufficient evidence to support petitioners (sic) convictions. (The record did not support convictions)
>
> **Supporting Facts:** Petitioner never sold drugs, did not know they were being sold, and was out of the country for her other son's wedding for the majority of the time. Petitioner's son admitted bringing marijuana into the house and petitioner did not know about the marijuana sales.
>
> **GROUND FOUR**: Petitioner verdict (sic) was against the weight of the evidence, violating 5th, 6th, 4th & 14th amendments.
>
> **Supporting Facts**: A miscarriage of justice occurred when petitioner was found guilty. Petitioner is innocent of these charges. Petitioner never sold drugs and never new (sic) about the marijuana.

(Petition, ECF No. 1).

## Analysis

**Grounds Two, Three, and Four Are Procedurally Defaulted**

Respondent pleads that Grounds Two, Three, and Four are procedurally defaulted by Petitioner's failure to include them in her appeal to the Supreme Court of Ohio. Examination of the text of Petitioner's Memorandum in Support of Jurisdiction confirms that reading.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of a procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>            . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

7

> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Application of *Maupin* here is straightforward. The Ohio Supreme Court will not decide claims that have not been presented to it in a timely appeal. Grounds Two, Three, and Four, although available to Petitioner in her timely appeal, were not presented. Ohio does not have a mechanism for a second direct appeal. Ohio also has a forty-five day time limit on appeals which has been expressly held to be an adequate and independent state procedural rule. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004). While the Ohio Supreme Court has not actually enforced this rule against Petitioner, there is no doubt it would as it has done so uniformly for many years.

A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015). Perhaps anticipating that Respondent would claim procedural default, Petitioner asserts in the Petition that the default is excused by the ineffective assistance of counsel she received from her attorney in the Supreme Court of Ohio (Petition, ECF No. 1, PageID 9, 11, 12).

Ineffective assistance of counsel which rises to the level of a constitutional deprivation can constitute excusing cause for a procedural default. Counsel's deficient performance in state court can serve as grounds for excusing a petitioner's procedural default. *Kelly v. Lazaroff,* 846 F.3d 819, 829 (6th Cir. 2017) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). However, deficient

8

performance can only count as unconstitutional ineffective assistance of counsel when it occurs in a proceeding in which a person is entitled to appointed counsel. *Wainwright v. Torna*, 455 U.S. 586 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner*, 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002). The right to appointed counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974). There is no right to have one's appeal heard by the Supreme Court of Ohio, whose jurisdiction on appeal is discretionary. Therefore deficient performance by counsel on appeal to the Ohio Supreme Court will not serve to excuse the procedural default of omitting issues later sought to be raised in habeas corpus. Respondent's procedural default defense to Grounds Two, Three, and Four is therefore well taken and should be sustained. Those three grounds should be dismissed with prejudice.

**Ground One: Failure to Disqualify the Clermont County Prosecutor's Office**

In her First Ground for Relief, Petitioner asserts she was constitutionally entitled to have the case prosecuted by a special prosecutor, rather than the Clermont County Prosecuting Attorney's Office. This issue was decided in the first instance by the Clermont County Court of Common Pleas, which was affirmed by the Ohio Court of Appeals for the Twelfth District.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S.

9

Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

For each claim adjudicated on the merits in the state courts, the decision the federal courts review is that of "the last state court to issue a reasoned opinion on the issue." *Joseph v. Coyle*, 469 F.3d 441, 450 (6th Cir. 2006), *citing Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005); *see also, e.g., Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("[A] federal court reviewing a habeas petition should examine the decision of the last state court to rule on the merits of the issue."); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002) ("This court . . . must look to the last reasoned decision of the state court as the basis of the state court's judgment.") . As is usually the case, the Supreme Court of Ohio gave no reasons for declining to accept the case, so it is the decision of the Twelfth District which this Court considers.

The Twelfth District decided Petitioner's First Assignment of Error as follows:

> {¶24} Assignment of Error No. 1:
>
> {¶25} THE TRIAL COURT ERRED BY NOT ORDERING A SPECIAL PROSECUTOR WHERE A COUNTY ASSISTANT PROSECUTOR SPENT A NIGHT DRINKING AND THEN SLEEPING IN BED WITH APPELLANT.
>
> {¶26} In her first assignment of error, appellant contends the trial court erred by not granting her motion to disqualify the Clermont County Prosecutor's Office after it came to light that appellant and a former assistant prosecutor spent an evening drinking and socializing with one another. Appellant maintains that a conflict of interest should have precluded the Clermont County Prosecutor's Office from prosecuting the case and that the court's failure to disqualify the prosecutor's office violated her right to a fair trial and due process of law.

10

{¶27} The record indicates that on July 6, 2018, more than two months before appellant was indicted, appellant had a chance meeting at a local bar with "RH," an assistant prosecuting attorney with the Clermont County Prosecutor's Office. Appellant and RH were both drinking. Appellant initiated contact with RH after learning from a friend that RH was an attorney. When appellant mentioned to RH that her home had been "raided," RH interjected to ask where her home was located. After being advised appellant's home was in Clermont County, RH informed appellant he was an assistant prosecutor with Clermont County and he could not discuss the matter with her. At this point in time, RH had no knowledge of appellant or of law enforcement's investigation into her activities.

{¶28} Appellant contends that despite RH stating he could not discuss the matter with her, RH kept bringing the topic up during the evening, asking her if she had a lawyer, and if she wanted him to call her attorney. RH denied that he had any further contact with appellant regarding law enforcement's investigation of her activities. RH did not contact appellant's attorney; however, RH admitted to texting Lt. DeRose around midnight to confirm appellant was the target of an investigation. Lt. DeRose confirmed the investigation the next morning, around 7:00 a.m. RH did not inform appellant he sent Lt. DeRose a text; nor did he inform appellant of the response he received.

{¶29} On the evening of July 6, 2018, appellant and RH left the bar and went to a mutual friend's home, where they continued drinking. Appellant, RH, and their mutual friends spent time in a hot tub together. After getting out of the hot tub, the homeowner offered to let everyone stay overnight so that they would not be driving after drinking. RH and appellant slept in the same bed, although they did not engage in any sexual activity. Though appellant claimed she only stayed out of fear after RH grabbed her by the arm and told her she was not going anywhere, text messages appellant sent to RH the following day undercut this claim. In the text messages, appellant unsuccessfully sought to make future plans with RH. RH did not, however, have any future contact with appellant.

{¶30} Approximately a month later, at the beginning of August 2018, a fellow prosecutor mentioned appellant by name during a discussion at the prosecutor's office. RH told the other prosecutor not to further discuss the case and disclosed his July 6, 2018 contact with appellant. RH did not have any further discussion or conversation with that prosecutor or any other assistant prosecutors about appellant. On August 7, 2018, RH resigned from the Clermont County Prosecutor's Office. More than a month later, on September

11, 2018, appellant was indicted for her involvement in the drug operation.

{¶31} Following her indictment, appellant filed a "Motion Requesting Withdrawal/Disqualification of Clermont County Prosecutor's Office" and supported her memorandum with an affidavit. The prosecutor's office opposed the motion and submitted an affidavit from RH. The trial court held a hearing on the motion on March 7, 2019, with appellant and RH both testifying. During the hearing, no evidence was presented that RH had obtained any incriminating statements or evidence from appellant or that RH had any involvement in the investigation, charging decisions, indictment or prosecution of appellant. At the close of the hearing, defense counsel conceded that he could not identify any way in which the encounter between appellant and RH had violated appellant's due process rights or prejudiced her.

{¶32} On March 12, 2019, the trial court issued a decision denying appellant's motion to disqualify the Clermont County Prosecutor's Office. The court found that no attorney-client relationship existed between appellant and RH and that the mere appearance of impropriety was not sufficient to warrant disqualification of the entire prosecutor's office. Specifically, the court stated:

> [RH's] testimony that he had no involvement or input into the investigation, indictment, or prosecution of [appellant] is unrefuted. Given his resignation from the prosecutor's office in August of 2018, [RH] will play no role at trial. Frankly, [RH] obtained no information from [appellant] that wasn't already known by law enforcement after they executed the search warrant on her residence in January of 2018. Given [appellant's] inability to demonstrate any prejudice, disqualification of the entire Clermont County Prosecutor's Office is not warranted in this case.

{¶33} We review a trial court's decision on a motion to disqualify under an abuse-of-discretion standard of review. *State v. Goff*, 4th Dist. Lawrence No. 11CA20, 2013-Ohio-42, 2013 WL 139545, ¶ 59. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's decision was arbitrary, unreasonable, or unconscionable. *State v. Gearhart*, 12th Dist. Warren No. CA2017-12-168, 2018-Ohio-4180, 2018 WL 4961411, ¶ 13.

4567{¶34} "A decree disqualifying a prosecutor's office should only be issued by a court when actual prejudice is demonstrated." *State*

*v. Hennessey*, 12th Dist. Clermont No. CA2020-01-002, 2020-Ohio-5232, 2020 WL 6554681, ¶ 23. "In making the determination, relevant factors may include, 1) the type of relationship the disqualified prosecutor previously had with a defendant, 2) the screening mechanism, if any, employed by the office, 3) the size of the prosecutor's office, and 4) the involvement the disqualified prosecutor had in the case." *Id.*, citing *State v. Morris*, 5th Dist. Stark No. 2004CA00232, 2005-Ohio-4967, 2005 WL 2300294, ¶ 15. "Prejudice will not be presumed by an appellate court where none is demonstrated." *Id.*, citing *State v. Freeman*, 20 Ohio St.3d 55, 485 N.E.2d 1043 (1985). Furthermore, "[t]he mere appearance of impropriety is insufficient to warrant the disqualification of an entire prosecutor's office." *State v. White*, 8th Dist. Cuyahoga No. 82066, 2004-Ohio-5200, 2004 WL 2340103, ¶ 25.

{¶35} Appellant contends consideration of the above-mentioned factors supports her motion to disqualify the Clermont County Prosecutor's Office. With respect to the first factor, appellant asserts that she and RH established an attorney-client relationship which required the entire prosecutor's office to be disqualified pursuant to Professional Conduct Rule 1.10. This rule provides as follows:

> While lawyers are associated in a *firm*, none of them shall represent a client when the lawyer *knows* or *reasonably should know* that any one of them practicing alone would be prohibited from doing so by Rule 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the *firm*.

(Emphasis sic.) Prof.Cond.R. 1.10(a).

{¶36} However, as Comment 7 to this rule explains, "[u]nder Rule 1.11(d), where a lawyer represents the government after having served clients in private practice * * * former-client conflicts are not imputed to government lawyers associated with the individually disqualified lawyer." Prof.Cond.R. 1.10, Comment 7. Moreover, "[b]ecause of the special problems raised by imputation within a government agency, [Prof.Cond.R. 1.11(d)] does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen such lawyers. Prof.Cond.R. 1.11, Comment 2.

13

> {¶37} Neither the Rules of Professional Conduct nor consideration of the factors set forth in *Hennessey* required disqualification of the Clermont County Prosecutor's Office. RH did not have an attorney-client relationship with appellant. He provided no legal service or advice to her. As soon as appellant stated her "raided" home was in Clermont County, RH informed appellant he could not discuss her legal situation due to his employment as an assistant prosecutor.
>
> {¶38} RH's "relationship" with appellant consisted of a single night of socializing and did not involve intimacy. RH was not involved in any aspect of the investigation or prosecution of appellant's case. Rather, RH distanced himself from the case. RH informed his superiors of his encounter with appellant and then resigned from the prosecutor's office without ever discussing the specifics of appellant's case. Finally, defense counsel conceded appellant was unable to demonstrate any prejudice that resulted from appellant's encounter with RH.
>
> {¶39} Accordingly, based upon the facts and record before us, we conclude that the trial court did not abuse its discretion in denying appellant's motion to disqualify the Clermont County Prosecutor's Office. Appellant's first assignment of error is overruled.

*State v. Fester, supra*.

In her Brief on appeal, Fester presented the First Assignment of Error as presenting both professional conduct claims under Ohio law and fair trial and due process issues under the United States Constitution (Appellant's Brief, State Court Record, ECF No. 11, Ex. 14, PageID 104). However, she cited no case law applying the Fifth, Sixth, or Fourteenth Amendment to any attorney disqualification situation. The Twelfth District did not disentangle the professional conduct issues from the constitutional issues, but did deny the First Assignment of Error as presented, with both state and federal issues conflated.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law

14

questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring). We cannot review in this proceeding the question whether the prosecuting attorney's office should have been disqualified as a matter of Ohio law. There is no federal due process right to have state law enforced. "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995).

Because the Twelfth District decided that failure to disqualify the Clermont County prosecuting attorney's office did not violate the United States Constitution, its decision is entitled to deference under 28 U.S.C. § 2254(d)(1) unless Petitioner can show that decision is contrary to or an unreasonable application of United States Supreme Court precedent. That she has not even attempted to do, particularly when she failed to file a reply. Her Memorandum in Support of Jurisdiction in the Ohio Supreme Court emphasizes the appearance of impropriety in her "relationship" with Herking, but offers no case law support for the proposition that having had a relationship of that nature with an assistant county prosecutor where there is no prejudice to the defendant and the relationship ended two months before indictment violates the Due Process or Fair Trial Clause. Petitioner's First Ground for Relief should be dismissed on the merits.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

December 10, 2022.

s/ *Michael R. Merz*
United States Magistrate Judge
